E. F. WOODS and SAMUEL WOODS, Appellants, *v.* MARINOR A. WILDER and others, Respondents.

By the act of congress of July 13, 1861, recognizing a state of civil war between the United States government and certain States of the Union, and the proclamation of the president of August 16, 1861, all commercial intercourse between the citizens of the loyal States and the inhabitants of those States of the Union declared to be in insurrection was interdicted and became unlawful.

This interdiction of intercourse involved a prohibition against every species of private contract with a subject or citizen of the enemy.

A bill of exchange drawn 23d August, 1861, by a citizen of the State of Georgia, upon his copartners in the city of New York, after the act of congress of July 13, 1861, and of the proclamation of the president of August 16, 1861, made pursuant thereto, is an illegal and void contract, and cannot be enforced against such copartners.

And this would be so, although the funds of a citizen would thereby be withdrawn from hostile territory. (RAPALLO, J.)

All commercial partnerships existing between citizens of the two contending parties in the late war were dissolved by the war.

(Cause argued November 17, 1870, and decided December 13, 1870.)

APPEAL from a judgment of the General Term of the Supreme Court in the first judicial district, directing judgment for the defendant on a verdict ordered at the New York circuit subject to the opinion of the court at General Term.

The defendants are sued as drawers of a bill of exchange for $5,000, alleged in the complaint to have been drawn by them at Savannah, Georgia, under the firm name of Wilder, Wheaton & Co., payable in New York, and protested for non-acceptance.

The bill was drawn by John F. Wheaton, in the name of the firm of Wilder, Wheaton & Co., on the 23d of August, 1861, at Savannah, where Wheaton then resided. Wheaton was at that time a member of the firm, unless the copartnership was dissolved by the war between the United States and the confederacy.

The defendants, Wilder and Beers, were the other members of the firm. They were residents of the city of New

York, where they transacted business under the firm name of Jonathan Beers & Co., and the draft was drawn upon them under that name.

The plaintiffs were residents of Boston, and through their agent at Savannah purchased the bill in question from Wheaton at that place, at the time the draft bears date, August 23, 1861. The plaintiff's agent paid Wheaton for the draft by a check for $4,500, on a bank in Savannah, which was honored, a due bill as agent for the plaintiffs for $500, and some currency for the exchange.

The New York firm refused to accept or pay the draft. The defendants, Wilder and Beers, who were alone served with process, in their answer aver that, at the time the bill was drawn, the defendant Wheaton was an inhabitant of the State of Georgia, and that all the inhabitants of that and other States named were in a state of insurrection against the United States. That a state of civil war existed between the people of said State and the United States, and had been so declared by an act of congress and the proclamation of the president, and all commercial intercourse between the inhabitants of said State and the citizens of the other States of the United States had been forbidden by said act of congress and said proclamation, and by the same was declared to be unlawful. Evidence was given at the trial tending to prove a verbal agreement on the 2d of August, 1861, between the plaintiffs and the defendants, Wilder and Beers, that if the plaintiffs should buy the exchange in Savannah, they would pay on evidence that the draft was drawn, and without presentation. This was controverted by the testimony of the defendants.

At the trial, the court directed a verdict for the defendants, subject to the opinion of the court at General Term. Judgment was there ordered for the defendants on the verdict. From that judgment the plaintiffs now appeal to this court.

*Ira D. Warren,* for the appellant, that the transaction did not constitute commercial intercourse, cited *Shortridge* v.

*Mason* (2 American Law Review, 95); Burrill's Law Dic., part 1, 235; Worcester's Dic., 273; "Commercial;" also 12 U. S. Statutes at large, 1–262; 1 Kent's Com., 57; Story on Contracts, § 497; Collyer on Partnership, 97, note 4, and § 784.

That actual notice to the plaintiff of the proclamation should have been shown by the defendants, *Bristol* v. *Sprague* (8 Wend., 424); *Wardell* v. *Haight* (2 Barb., 549); *Ketchum* v. *Clark* (6 Johns., 144); *Davis* v. *Allen* (3 Com., 168); *Clapp* v. *Rogers* (12 N. Y., 283); 2 Campbell, 44.

*Robert D. Benedict,* for the respondents, that courts would take judicial notice of facts of proclamation, etc., cited *Swinerton* v. *The Columbian Ins. Co.* (37 N. Y. Rep., 174); Prize Cases, 2 Black, 667; *Taylor* v. *Barclay* (2 Simons, 391); 1 Chitty's Pleading, 196.

That bill of exchange was void, and could not be enforced, *White* v. *Burnley* (20 How. U. S. Rep., 249); 6 T. R., 723; 2 B. & P., 374; 1 id., 272; 3 id., 35; 3 Vesey, 612; *Craig* v. *Missouri* (4 Peters, 410).

That it was against public policy, 1 Brod. & Bing., 447; 2 T. R., 610; 2 B. & P., 130; *Kennett* v. *Chambers* (14 How., 38); *Bank of U. S.* v. *Owens* (2 Peters, 527); *Scholefield* v. *Eichelberger* (7 Peters, 586); also 2 Wallace, 419; *Prize Cases* (2 Black., 667); id., 670 ; *Mrs. Alexander's Cotton* (2 Wallace, 419); *Prize Cases* (2 Black., 635); *Jackson Ins. Co.* v. *Steward* (6 Am. Law Reg., N. S., 732); *The Emulus* (1 Gallison, 594); *The Hiawatha* (Blatchford Prize Cases, 1); *The Mary Clinton,* id., 356 ; *The Rapid* (8 Cranch, 135); *The Hoop* (1 Robinson's Rep., 165); *The U. S.* v. *Grossmayer* (9 Wallace, 74).

That war dissolves a partnership, *Griswold* v. *Waddington* (16 Johns., 438); Story on Contracts, § 54; *Willison* v. *Patterson* (7 Taunt. Rep., 439); *Brandon* v. *Nesbitt* (6 Term. Rep., 23); Wheaton's Int. Law, 36 ; *Kluber Droit des Gens,* § 240 ; *The Wm. Bogaldy* (5 Wall, 407); *Bilgery* v. *Branch* (17 Am. Law Reg., 336).

RAPALLO, J. The historical events and the acts of the national executive, in connection with the hostile relations between the government and the rebel States, which had transpired prior to the act of congress of July 13, 1861, are detailed in the opinion of the court in the case of *Swinerton* v. *The Columbian Ins. Co.* (37 N. Y., 174), and it is not necessary to repeat them here.

The question whether these events and acts established a state of war between the government· and the sections in rebellion, was determined in the Prize Cases (2 Black., 635), and it was there held that a state of civil war existed as early as the date of the first capture involved in that case, which was May 17th, 1861. That the proclamation of April 15th, calling out the militia, and the proclamation of blockade of April 27th and 30th, were conclusive evidence of such war. That such war affected the rights of the two sections of our country in the same manner as if it were being carried on by two contending nations. That it gave to the United States government the same rights of blockade and capture in respect to the enemy and neutrals as they might exercise in case of a foreign war, and that all persons residing in the rebel districts were to be treated as enemies of the nation.

From this decision NELSON, J. and three of his associates dissented, holding that before the insurrection could be dealt with on the footing of a war, it must be recognized or declared by congress, the only war making power of the government, and that no power short of that could change the legal status of the government, or the relations of its citizens, from that of peace to a state of war. But they conceded, that the act of July 13, 1861, did recognize a state of civil war between the government and the States described in the proclamation of August, 16th, and made it territorial. (2 Black., 689.)

There can be no question, therefore, that war with all its incidents and effects upon intercourse and contracts between the inhabitants of the territories of the respective belligerents prevailed on the 23d of August, 1861, when the bill of

exchange in question was drawn, and that the courts are bound to take notice of that fact.

All commercial intercourse with the inhabitants of the enemy's territory is during war unlawful. By the proclamation of August, 16th, it was specially interdicted. This interdiction of intercourse involves, according to well settled rules, a prohibition against every species of private contract with the subject or citizen of the enemy. (Wheaton's Int. Law, § 317; 1 Kent's Com., 67; Story on Cont., § 608; *White* v. *Bromley*, 2 How., 249; *Scholefield* v. *Eichelberger*, 7 Peters, 586; *U. S.* v. *Grossmayer.* 9 Wall., 75.) In the case of *Mrs. Alexander's Cotton* (2 Wall., 404), it was determined that all persons residing in rebel territory must be regarded as enemies, except so far as distinctions are expressly made by the government. CATRON, J., in pronouncing the decision of the court in the case, states that the court cannot inquire into the personal character and dispositions of individual inhabitants of enemy territory, but must be governed by the principle of public law so often announced as applicable alike to civil and international wars, that all the people of each State or district in insurrection against the United States must be regarded as enemies.

It is therefore unnecessary to consider the question of the individual disposition of Wheaton; he was a citizen of Georgia and resided within the district embraced in the proclamation.

The rule prohibiting contracts with the enemy during war, is applicable to the drawing and negotiating of bills of exchange between subjects of the powers at war. (Wheaton Int. Laws, § 317; Story on Cont., 4th ed., § 608; *Willison* v. *Patterson and others*, 7 Taunt., 439.) Chancellor KENT (1 Kent's Com., 67), states that the drawing of a bill of exchange by an alien enemy on a subject of the adverse country is an illegal and void contract, because it is a communication and contract with the enemy.

Some exceptions to this rule are stated, in the books, to be allowed by reason of the necessity of the case. These are bills drawn for ransom, and bills drawn by a citizen in the

enemy's country on his own country, to provide him with necessary means of subsistence. The case of *U. S.* v. *Barker*, referred to by the appellant's counsel in 1 Paines C. C. R., 166, is difficult to reconcile with the authorities; but even that case contains special circumstances not existing in the present case. The bill, in that case, was drawn here by a citizen of the United States against funds which he had in England, and was indorsed to the United States government, and prosecuted in its name and behalf.

The argument, that the effect of drawing the bill in the present case, was to remove the plaintiffs' funds from Georgia to New York; and that, therefore, the contract was not within the spirit of the prohibition, cannot be maintained. Even if the transaction had the effect claimed, yet, if not licensed by our government, it would come within the general prohibition. Nations at war adhere to these interdictions for reasons of general policy, although in special cases they may recoil upon themselves. In the Prize cases, one item of the property in dispute was restored to the claimant, not merely on the ground that it was the property of a loyal citizen which he was attempting to withdraw from the enemy's country; but, on the additional ground, that an order of the secretary of the navy permitted such withdrawal. But in the case of the *U. S.* v. *Grossmayer* (9 Wall., 75), G., a creditor in New York, directed E., his debtor in Georgia, to invest the amount of the debt in cotton and hold it for him, which was done. The cotton was stored in Georgia as the property of G., and was seized by the United States, and the proceeds were claimed by G. under the captured and abandoned property act of 1863. But the court held, that as G. was prohibited during the war from having any dealings with his debtor, it followed that nothing which either, or both of them did, could have the effect to vest in G. the title to the cotton in question. The reasons for making an exception in that case, were much stronger than in this. There, the cotton was withdrawn from the use of the enemy, and locked up in store for the benefit of the northern creditor; but in the pre-

sent case, the dealings did not, in fact, effect any change in the position of the fund, which was advantageous to our government; it merely transferred its custody from the bank to Wheaton, and gave him the full power of disposal over it.

The draft being illegal and void, no action could lie against any of the parties to it; but there are other reasons applicable to the defendants, Wilder and Beers, which clearly exonerate them.

All commercial partnerships, existing between subjects of the two parties prior to the war, are dissolved by the mere act and force of the war itself (Story on Con., § 609, 4th ed.; 1 Kent's Com., 67; *Griswold* v. *Waddington*, 16 Johns., 438); and this consequence was held to ensue from the civil war of 1861. (*The William Bagaley*, 5 Wall., 377, 407.) Wilder and Beers, therefore, were not bound by the contract of Wheaton made after such dissolution.

The appellant seeks to charge them, however, under an alleged verbal agreement claimed to have been made by them on the 2d of August, 1861. They allege that there was proof in the case, that on that day Wilder and Beers agreed that, if the appellants would buy the drafts of Wheaton, they would pay them without presentation, on evidence that they had been drawn; and they claim that this question, not having been submitted to the jury, there was a mistrial. The evidence as to the agreement is very slight and indefinite, and the making of the agreement is positively denied by the defendants. But there are other grounds which are controlling as to this branch of the case. Aside from the objection which might be raised, that the agreement should have been in writing (1 R. S., 768; 9 N. Y., 435; 5 Duer, 583), the further objection is insuperable, that the act which the plaintiff was to do, to entitle him to performance on the part of the defendants, became illegal before anything was done in pursuance of the supposed agreement. It may well be that on the 2d of August, in view of the terms of the act of July 13th, 1861, the purchase of a bill of exchange from an enemy would not have been unlawful; for although a war then

existed, the result of which would be to render commercial intercourse with the enemy unlawful, without the permission of our government, yet the government was competent to give such permission, and the act of July 13th may be construed as permitting such intercourse to continue until the president should make his proclamation. The terms of the act are, that the president may declare certain districts in insurrection, and that *thereupon* all commercial intercourse, etc., *shall cease* and be unlawful, etc. This language implies a permission that such intercourse should continue until the proclamation should be made, and the good faith of the government would be pledged to give effect to this implied permission. But after the 2d of August and before the bill was drawn the proclamation of August 16th was made, and that proclamation clearly prohibited the transaction contemplated by the supposed agreement of August 2d and rendered it unlawful.

There is no ground upon which this action can be sustained, and the court below therefore rightly rendered judgment for the defendant on the verdict.

The judgment should be affirmed, with costs.

All concurred for affirmance.

Judgment affirmed.