BRITTAN (JONES v.). See Case No. 7,455.

BRITTON v. BREWSTER. See Cases Nos. 1,905 and 1,906.

## Case No. 1,903.

### BRITTON v. BUTLER.

[9 Blatchf. 456; 11 Am. Law Reg. (N. S.) 293; 5 Am. Law T. Rep. 101; 15 Int. Rev. Rec. 98; 4 Chi. Leg. News, 169; 6 Am. Law Rev. 581.] [1]

Circuit Court, S. D. New York. Feb. 23, 1872.

LIMITATION — RUNNING OF STATUTE — TORT BY MILITARY OFFICER—NON-INTERCOURSE — NEGOTIABLE INSTRUMENTS—SEIZURE—CONFISCATION—AUTHORITY.

1. To an action of assumpsit the defendant pleaded, (1) that he was military commander under the United States, at New Orleans, and martial law obtained there, from May 1st, 1862, till December 16th, 1862; that, on September 1st, 1862, the armed forces under his command captured a person endeavoring to make his way from the enemy's lines, in Mississippi, to New Orleans; that there were found concealed on his person certain drafts drawn by persons in Natchez, Mississippi, then in the occupation of the enemy, on persons in New Orleans, then

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission. 6 Am. Law Rev. 581, contains only a partial report.]

in the occupation of the forces of the United States; that the defendant, in his military capacity, and under the authority of the president and the acts of congress, captured said drafts, and caused the proceeds thereof, when collected, to be turned over to the treasury of the United States, and they had been credited to him, by order of the president; and that the causes of action sued on arose out of said acts and doings; (2) that the pretended acts which, if true, would give to the plaintiff the supposed causes of action sued on, were performed by the defendant, if performed, as a military officer of the United States, and in pursuance of the laws of the United States, and of the orders of the president, and during the late rebellion, and that said supposed causes of action did not accrue within two years next before the commencement of the suit, nor within two years after March 3d, 1863: *Held*, on demurrer to the pleas, that the pleas were bad.

[Cited in Flanders v. Tweed, 16 Wall. (83 U. S.) 518.]

2. Commercial intercourse between the state of Mississippi and the city of New Orleans being unlawful, under section 5 of the act of July 13th, 1861 (12 Stat. 257), and the proclamation of the president, of August 16th, 1861 (12 Stat. 1262), the drafts mentioned in the first plea were illegal and void instruments.

[Cited in Williams v. Mobile Sav. Bank, Case No. 17,729.]

[See U. S. v. Lapene, 17 Wall. (84 U. S.) 601.]

3. The seizure of the drafts passed no title to the United States to the moneys in the hands of the drawees in New Orleans, which were collected on the drafts, the bills not having been accepted before seizure.

4. The moneys in the hands of the drawees of the bills were not, on the facts set out in the first plea, subject to seizure.

5. A mere declaration of war does not confiscate enemy property, or debts due to an enemy, nor does it so vest the property or the debts in the government, as to support judicial proceedings for confiscation of the property or debts, without the expression of the will of the government, through its proper department, to that effect. Under the constitution of the United States, the power of confiscating enemy property and debts due to an enemy, is in congress alone.

6. The confiscation acts of August 6th, 1861 (12 Stat. 319), July 17th, 1862 (12 Stat. 589), and March 12th, 1863 (12 Stat. 820), all of them provide for a seizure only with a view to judicial proceedings.

7. None of the confiscation acts authorize the confiscation of moneys situated as the moneys in this case are alleged by the said first plea to have been situated.

[Cited in Flanders v. Tweed, 16 Wall. (83 U. S.) 518.]

8. The possession of the unaccepted drafts, considered as captured documents constituting the evidence of debts due to an enemy, gave no right to the captors to take physical possession of the moneys of the drawees.

9. The act of March 2d, 1867 (14 Stat. 432), approving, legalizing and making valid certain acts and orders of the president, or acts done by his authority or approval, and certain proceedings, acts, arrests and imprisonments, does not embrace the transactions set up in said first plea.

10. The fact, that martial law obtained in New Orleans, on September 1st, 1862, does not, on the allegations in said first plea, make an order of the president authorizing or approving the seizure of said moneys, an act or order of his respecting martial law, or make the act of the defendant in seizing the moneys an act

of his respecting martial law, within the meaning of said acts. There is nothing in the mere existence of martial law, which, on the facts alleged in said first plea, justifies the seizure of said moneys.

11. If said moneys were voluntarily paid to the defendant, the fact that he received them as a military commander, and in obedience to the orders of the president, and paid them into the treasury, and that such payment has been approved by the president, cannot vary his liability for them to the plaintiff, if he would otherwise be liable for them.

12. The 7th section of the act of March 3d, 1863 (12 Stat. 757), providing a two years' limitation for the bringing of a suit for an arrest or imprisonment made, or trespass or wrong done or committed, or act omitted to be done, during the late rebellion, under authority of the president, or of an act of congress, does not apply to an action of assumpsit.

[See Milligan v. Hovey, Case No. 9,605.]

[See note at end of case.]

[At law. Action by William A. Britton against Benjamin F. Butler to recover the proceeds of certain drafts seized by defendant in his capacity as military commander at New Orleans during the Civil War. Plaintiff demurred to the special pleas interposed by defendant to the declaration, which demurrer was sustained.]

Vose & McDaniel [2] (Everett P. Wheeler, of counsel), for plaintiff.

Develin, Miller & Trull [2] (John E. Develin, of counsel), for defendant.

BLATCHFORD, District Judge. This suit was brought in a state court and transferred into this court. The declaration is in assumpsit, on the money counts and an account stated. The damages are laid at $15,000, and the causes of action are alleged to have accrued at New Orleans, in the state of Louisiana, on the 1st day of September, 1862. The defendant pleads the general issue and two special pleas. To each of the special pleas a special demurrer is interposed by the plaintiff, alleging defects in substance and form.

The first special plea avers, that, from the 24th of February, 1862, until the 16th of December, 1862, the defendant was a major-general of volunteers, duly commissioned by the president, in the service of the United States, and was assigned to the military geographical department of the gulf, including within its bounds the state of Louisiana, and, as such commander, so assigned, took possession of the city of New Orleans and the adjacent portion of said state of Louisiana, and held the same by the armed forces of the United States, of which he was in command in time of war, and, with such armed forces, was engaged in carrying on the war and suppressing the recent rebellion against the United States, then having broken out into public territorial war in said state of Louisiana and the adjacent states of Mis-

[2] [From 15 Int. Rev. Rec. 98, and 4 Chi. Leg. News, 169.]

sissippi and Texas; that, by due proclamation, according to the customs and usages of war, martial law was declared and proclaimed and obtained in said department, from the 1st of May in said year 1862, all the time till the 16th day of December in said year, and, during all said time, the defendant was acting under the orders and proclamations of the president of the United States, and in administration, and in virtue and under color, of the acts of congress; that, on the 16th of August, 1861, pursuant to the statutes of the United States in such case made and provided, the inhabitants of the states of Louisiana and Mississippi and other states, were, by a proclamation of the president of the United States, declared to be in a state of insurrection against the United States, and that all commercial intercourse should cease, as, by such proclamation, will fully appear; that, at the time of the promises and undertakings, and of the supposed grievances, complained of by the plaintiff, and subsequently thereto, such proclamation was and remained in full force and virtue; that, on or about the 1st of September, in said year, the pickets of the armed forces of the United States then under the command of the defendant, and stationed on the outer lines of the camp or garrison of New Orleans, for the protection of said camp or garrison against the enemy, captured a person endeavoring to make his way furtively from the lines and territory occupied by the enemy, to wit, from the city of Natchez in said state of Mississippi, then in the armed occupation of the enemy, to the said city of New Orleans, then in the armed occupation and possession of the United States' forces, as aforesaid; that there were found concealed upon the person so captured two or more drafts, checks or bills of exchange, drawn by persons or firms doing business in said city of Natchez, then in the occupation of the enemy, upon persons or firms doing business in the said city of New Orleans, then in the occupation of the United States' forces; that, thereupon, the defendant, as such major-general, and in obedience to the orders and proclamations of the president of the United States, and in the administration, and in virtue and under color, of the acts of congress in such case made and provided, captured said drafts, checks, or bills of exchange, and caused the proceeds thereof, when collected to be turned over to the treasury of the United States, which said proceeds have been duly passed upon, audited and credited to him by the order of the president of the United States; and that out of the acts and doings aforesaid, and not otherwise, arose the said several causes of action of which the plaintiff complains.

Under the provisions of the 5th section of the act of July 13th, 1861 (12 Stat. 257), and the proclamation of the president, of August 16th, 1861 (12 Stat. 1262), the inhabitants of the states of Mississippi and Louisiana (with certain specified exceptions) were declared to be in a state of insurrection against the United States, and all commercial intercourse between the said states of Mississippi and Louisiana and the inhabitants thereof, and the citizens of other states and other parts of the United States, was made unlawful after the date of said proclamation, with the said specified exceptions. One of those exceptions excepted from the inhabitants of the state of Louisiana the inhabitants of such parts of that state as might be, from time to time, occupied and controlled by forces of the United States engaged in dispersing the insurgents against the laws, constitution and government of the United States. On the facts set up in the first special plea, it clearly appears, that, on the 1st of September, 1862, and when the matters alleged in the said plea took place, commercial intercourse between the state of Mississippi and the city of New Orleans was unlawful. That being so, the drafts, checks or bills of exchange, mentioned in that plea, drawn by persons doing business in Natchez, Mississippi, on persons doing business in New Orleans, were illegal and void instruments. The Ouachita Cotton, 6 Wall. [73 U. S.] 521, 530; Woods v. Wilder, 43 N. Y. 164.

The defendant contends, that, as the bills of exchange were thus void, they were subjects of confiscation; that, as martial law prevailed, and there were no courts and no civil authorities, the bills of exchange became confiscate at the will of the commanding general, without any of the ordinary processes of law; that the bills thus became the property of the United States, in the hands of the general in command; that he, on behalf of the United States, and as its agent, collected the amounts for which they were drawn, being the same moneys to recover which the suit is brought; and that that is a defence to the suit. It is difficult to see how the consequence logically follows the premises. If the bills of exchange were void, then, even if they were confiscable by mere seizure, it is difficult to see how their seizure and confiscation passed a title to the United States to the moneys in the hands of the drawees of the bills in New Orleans, which the defendant sets up that he afterwards received as a collection of the bills. The bills are not averred to have been accepted by the drawees before they were seized. The confiscation, by the seizure, if of anything, was merely of the naked pieces of paper seized. It gave no valid claim to the United States to collect from the drawees the moneys expressed in the bills. If the moneys were seized in the possession of the drawees, the transaction was no different from what it would have been if the bills of exchange had never been drawn or seized. If the moneys were voluntarily paid by the drawees to the defendant, on a demand for them, as being drawn for by the bills, the

bills being void instruments, their seizure could confer on the United States, and on the defendant, no title to receive or retain the moneys, which they would not have had if the bills had never been seized or presented. The transaction set up in the first special plea comes down, then, to this, that the defendant, by order of the president of the United States, either took or received the moneys referred to, which are the moneys sued for.

If the defendant took the moneys by seizing them, the act, so far as the special plea shows, was unlawful. The moneys are not therein alleged to have been forfeitable or subject to seizure for any cause whatever. No act of congress, or proclamation or order of the president, is referred to, which made such moneys forfeitable or liable to seizure. They were not seized while passing between loyal and disloyal territory. They were in loyal territory. The plea is, that the defendant, having captured these void drafts, in the discharge of his duty, took away from the persons who were the drawees of the drafts, certain moneys belonging to the plaintiff, and paid them into the treasury of the United States, and that, by the order of the president of the United States, those moneys have been passed upon, audited and credited to him. There is no warrant for saying that the transaction, as set up in the plea, if one of seizure, was lawful. The moneys are not even averred to have been the property of an enemy or of an insurgent. The fact that the drawers of the bills, which are alleged in the plea to have been drafts, checks or bills of exchange, were within the insurgent territory, and that the bills were drawn there, although it may warrant the presumption that the drawees were debtors to the drawers to the amounts of the bills, does not warrant the presumption that the moneys in the hands of the drawees were not the moneys of the drawees, or were the moneys of persons within the insurgent territory, or were the moneys of the enemy. The case, then, as one of seizure, is one of seizure, in loyal territory, of the moneys of persons in such territory, not alleged to have been enemies of the United States.

Even if the moneys were the property of an enemy of the United States, or were the representative of debts due to such enemy, the plea sets up no authority for their seizure. The mere declaration of war does not confiscate enemy property or debts due to an enemy, nor does it so vest the property or the debts in the government, as to support judicial proceedings for the confiscation of the property or debts, without the expression of the will of the government, through its proper department, to that effect. Under the constitution of the United States, the power of confiscating enemy property and debts due to an enemy is in congress alone. Brown v. U. S., 8 Cranch [12 U. S.] 110. In legislating on the subject, congress has passed various acts, but none of them authorize the confiscation of moneys situated as the moneys in this case are alleged by the plea to have been situated. The act of August 6th, 1861 (12 Stat. 319), provides for the seizure by the president, and the condemnation by judicial proceedings, of property acquired or disposed of with intent to employ the same in aiding the insurrection, and property knowingly so employed. The act of July 17th, 1862 (12 Stat. 589), provides for the seizure by the president, and the application to the support of the army of the United States, through judicial proceedings, of the proceeds, of the property, money, credits, and effects, of persons holding office under the insurgents, and of persons owning property in loyal territory, who aid the rebellion, and of persons in the rebel states in arms or aiding the rebellion, who do not return to their allegiance within sixty days after warning by proclamation. The act of March 12th, 1863 (12 Stat. 820), provides for the confiscation, through judicial proceedings, of property coming from within the insurgent states into the loyal states, otherwise than according to regulations prescribed by that act. All of these acts provide for a seizure only with a view to judicial proceedings. Even if a seizure in this case was lawful, no judicial proceedings are set up, but only a turning over of the moneys to the treasury of the United States. Considered as a capture of documents constituting the evidence of debts due to an enemy, (if that is predicable of unaccepted bills), and as giving the right to capture the moneys, representing the debts, as the property of the enemy, the transaction stands in no different posture. The bills captured were not the debts. The possession of the unaccepted bills gave no right to the captors to take physical possession of the moneys of the drawees, and could have no effect to divest or affect the title of the drawees to such moneys, or their right of possession in the same. Hall. Int. Law, c. 19, § 8.

The act of March 2d, 1867 (14 Stat. 432), is invoked in aid of the plea. That act provides, that all acts and orders of the president, or acts done by his authority or approval, after March 4th, 1861, and before July 1st, 1866, "respecting martial law, military trials by courts martial or military commissions, or the arrest, imprisonment, and trial of persons charged with participation in the late rebellion against the United States, or as aiders or abettors thereof, or as guilty of any disloyal practice in aid thereof, or of any violation of the laws or usages of war, or of affording aid and comfort to rebels against the authority of the United States, and all proceedings and acts done or had by courts martial or military commissions, or arrests and imprisonments made in the premises by any person by the authority of the orders or proclamations of the president, made as

aforesaid, or in aid thereof," are thereby approved in all respects, legalized, and made valid, "to the same extent and with the same effect as if said orders and proclamations had been issued and made, and said arrests, imprisonments, proceedings, and acts had been done, under the previous express authority and direction of the congress of the United States, and in pursuance of a law thereof previously enacted, and expressly authorizing and directing the same to be done." It also provides, that no court "shall have or take jurisdiction of, or in any manner reverse, any of the proceedings had or acts done as aforesaid, nor shall any person be held to answer in any of said courts, for any act done or omitted to be done, in pursuance or in aid of any of said proclamations or orders, or by authority, or with the approval, of the president, within the period aforesaid, and respecting any of the matters aforesaid;" and that "all officers and other persons in the service of the United States, or who acted in aid thereof, acting in the premises, shall be held, prima facie, to have been authorized by the president." This act applies solely to "the matters" and "the premises" mentioned in it, and those do not embrace the transaction set up in the plea. The fact, that martial law obtained in New Orleans on the 1st of September, 1862, does not, on the allegations in the plea, make an order of the president authorizing or approving the seizure of these moneys, an act or order of his respecting martial law, or make the act of the defendant in seizing the moneys an act of his respecting martial law, within the meaning of the statute. There is nothing in the mere existence of martial law, which, on the facts alleged in the plea, justifies the seizure of the moneys. In the case of The Venice, 2 Wall. [69 U. S.] 258, the supreme court, referring to the reoccupation of New Orleans by the forces of the United States, in May, 1862, and to the proclamation of the commanding general, on the 6th of that month, declaring the city to be under martial law, and also declaring that "all the rights of property, of whatever kind, will be held inviolate, subject only to the laws of the United States," says, that, under the act of July 13th, 1861, and the proclamation of the president, of August 16th, 1861, the city of New Orleans, after its actual, substantial, complete, and permanent military occupation and control by the United States, in May, 1862, could not be regarded as in actual insurrection, nor could its inhabitants be regarded as subject, in most respects, to treatment as enemies; and that such military occupation and control drew after it the full measure of protection to persons and property consistent with a necessary subjection to military government. The plea sets up no necessity for the seizure of the moneys, and no justification therefor, within these principles.

If the moneys were voluntarily paid to the defendant, and not seized by him by military power, the fact that he received them as major-general, and in obedience to the orders of the president, and paid them into the treasury, and that such payment has been approved by the president, cannot vary his liability for them to the plaintiff, if he would be liable for them in case no such fact existed, on evidence to be adduced by the plaintiff under his declaration. Whether, if the case ever comes to trial on the plea of the general issue, the plaintiff can make out the defendant's liability, is another question. All I mean to say is, that, if the defendant is otherwise liable, the facts set up in the plea constitute no defence to the action. The demurrer to the first special plea must, therefore, be allowed, with leave to the defendant to amend, on payment of costs.

The second special plea avers, that the pretended acts which, if true, would give to the plaintiff the supposed causes of action mentioned in the declaration, were performed, if performed by the defendant, as a major-general of volunteers in the army of the United States, duly commissioned by the president, and under and in pursuance of the laws of the United States, and the orders and proclamations of the president, and during the late rebellion of the southern states against the authority of the general government of the United States; and that said supposed causes of action did not, nor did any or either of them, accrue within two years next before the commencement of this action, nor within two years after March 3d, 1863.

The statute relied on as supporting this plea is the 7th section of the act of March 3d, 1863 (12 Stat. 757), which enacts, that "no suit or prosecution, civil or criminal, shall be maintained for any arrest or imprisonment made, or other trespasses or wrongs done or committed, or act omitted to be done, at any time during the present rebellion, by virtue or under color of any authority derived from, or exercised by or under, the president of the United States, or by or under any act of congress, unless the same shall have been commenced within two years next after such arrest, imprisonment, trespass, or wrong may have been done or committed, or act may have been omitted to be done, provided, that, in no case shall the limitation herein provided commence to run until the passage of this act, so that no party shall, by virtue of this act, be debarred of his remedy by suit or prosecution, until two years from and after the passage of this act." It is sufficient to say, that this suit is an action of assumpsit, and is not a suit for an arrest or imprisonment made, or a trespass or wrong done or committed, or an act omitted to be done, during the rebellion. Moreover, the plea does not aver that the "pretended acts" which it refers to

were arrests or imprisonments or trespasses or wrongs. The 4th section of the same act makes an order of the president, or under his authority, made during the existence of the rebellion, a defence only to an action or prosecution, civil or criminal, "for any search, seizure, arrest, or imprisonment made, done, or committed, or acts omitted to be done, under and by virtue of such order, or under color of any law of congress." The nature of the action, for the purposes of the demurrer to this plea, can be judged of only by the declaration. The demurrer to the second special plea is, therefore, allowed, with leave to the defendant to amend, on payment of costs.

[NOTE. This case was subsequently heard upon the merits, at which judgment was directed for the defendant, on the ground that the plaintiff's cause of action was barred by the statute of limitations. See Case No. 1,904, following.]