THE BANK OF NEW ORLEANS, Respondent, *v.* EDWARD MATTHEWS, impleaded, etc., Appellant.

By the late civil war all commercial partnerships between citizens of the northern and of the southern or Confederate States were dissolved. A citizen, therefore, of the State of New York, a former member of such a partnership, doing business in New Orleans, is not liable upon a note indorsed in the firm name after the commencement of the war. In an action upon a note thus indorsed, the fact that in a power of attorney, given to an agent of the firm, executed by such citizen, he is described as of New Orleans, does not estop him from alleging a residence in New York, in the absence of proof that the party discounting the note had seen the power of attorney or believed he resided in New Orleans.

(Argued February 23, 1872; decided March 26, 1872.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict.

These actions are brought against defendants as members of the firm of Brander, Chambliss & Co., upon promissory notes indorsed by said firm and discounted by plaintiff.

On the 27th March, 1861, the firm of Brander, Chambliss & Co. was formed by authentic or notarial act, consisting of James S. Brander, Jr., Samuel L. Chambliss and Edward Matthews as general partners, and James S. Brander, Sr., being named in said act as partner *in commendam.*

Matthews was a resident of the city of New York. James S. Brander, Sr., was then in the island of Nassau. It was stated in the articles that in case of his refusal to approve, the contract should be void. A copy of the articles was forwarded and he refused to approve. On the 26th of April, 1861, the defendant, Mr. Matthews, made a power of attorney to Glendy Burke, authorizing him to act as the attorney of the firm of Brander, Chambliss & Co. The power of attorney recites that Mr. Brander, Sr., composed one of the firm, as partner *in commendam.* In it it is stated that Mr. Matthews was a resident of New York. He left New Orleans about the 1st of May, 1861, for New York. The notes in

question were indorsed and discounted by plaintiff about May 5th, 1862.    On the 21st of October, 1861, notice of dissolution of the firm of Brander, Chambliss & Co. was published in the New Orleans Picayune newspaper by the members of the firm in New Orleans.

The State of Louisiana passed an ordinance of secession, January 25th, 1861.

The attack on Fort Sumter was made April 13th, 1861.    The first proclamation of President Lincoln, calling out troops, bears date April 15th, 1861.

The second proclamation declaring several States (and among them Louisiana) in a state of insurrection, was issued April 19th, 1861.

A third proclamation was issued relative to blockade, April 27th, 1861.

The act of congress authorizing the president by proclamation to declare all commercial intercourse void between the citizens of the insurrectionary States and citizens of the rest of the United States was passed July 13th, 1861, and the proclamation pursuant to the act of congress was issued August 16th, 1861.

New Orleans remained in possession of the rebel or Confederate forces until it was captured, on or about May, 1862; and a proclamation was issued by the president on the 12th of May, 1862, raising the blockade of New Orleans and restoring commercial intercourse with the inhabitants, under certain restrictions and rules established by the treasury department.    Other facts appear in the opinion.

*John Sherwood* for the appellants.    The effect of the rebellion was to dissolve a copartnership between citizens of the north and south. (*The Prize Cases*, 2 Black., 635; *The Venice*, 2 Wallace, 274; *Mrs. Alexander's Cotton*, 2 Wallace, 404; *The William Bagaley*, 5 Wallace, 377, 407; *The United States* v. *Grossmeyer*, 9 Wallace, 75; *Granger* v. *Abbot*, 6 Wallace, 535; *Swinnerton* v. *The Columbia Ins. Co.*, 37 N. Y., 178; *Sanderson* v. *Morgan*, 39 N. Y., 231;

*Woods* v. *Wilder*, Dec., 1870, 43 id., 164; *Griswold* v. *Waddington*, 15 John., 57; 16 id, 438; *The Rapid*, 8 Cranch, 155; *Scholefield* v. *Eichelberge*, 7 Peters, 585; *Allan* v. *Russell*, 12 Amer. Law Reg., 302; *Billgery* v. *Branch*, 17 Amer. Law Reg., 33.) The commencement of the war was prior to the appointment of Burke. (*Swinnerton* v. *Col. Ins. Co.*, 37 N. Y., 186.) Defendant is not estopped by his acts from setting up the dissolution of the partnership. (*Griswold* v. *Waddington*, 16 J., 484–487; *Coppell* v. *Hall*, 7 Wal., 558). Plaintiff during the war had no status and could not sue in New York. (*Sanderson* v. *Morgan*, 39 N. Y., 231; 2 Wal., 421.)

*G. W. Comstock and A. M. Spier* for the respondent. The doctrine as to the effect of the war upon existing contracts is not applicable in these actions. (*Swinnerton* v. *Col. Ins. Co.*, 37 N. Y., 174.) The war could have no effect on defendants' liability on paper, existing before the war broke out; it dissolved contracts as to the future only. (*Griswold* v. *Waddington*, 16 John., 493; *Wood* v. *Braddock*, 1 Stanton, 104, 105; *Buchanan* v. *Curry*, 19 John. R. 137, 142, 143). Notice to the firm, at its place of business in New Orleans, was sufficient, and was notice to all its members. (*Gowan* v. *Jackson*, 20 John., 176–179; *Court House* v. *Parker*, 1 Camp., N. P. R., 82; *Brown* v. *Turner*, 15 Ala., 832 ; *Carter et al.* v. *Thompson*, 19 id., 717–727; *Dabney* v. *Stidger*, 1 S. & M., 749; *Dabney* v. *March*, 22 Maine, 184; Bayes on Bills, cited in note 3 to Edwds. on Bills, 632). Defendants carried on the business after the war broke out, and are estopped from setting up as a defence the law they deliberately violated. (Story on Contracts, § 497; Collyer on Part., § 97, note, § 784). The agency was not dissolved or even suspended by the war. (*Clark* v. *Mooney*, 10 John. Ch.; *Griswold* v. *Waddington*, 15 John., 57, 68; *Buchanan* v. *Curry*, 19 id., 137–141; *Conn.* v. *Penn.*, 11 Peters' C. C. R., Pa., 496–524; *Robinson* v. *International Lf. Ins. Co. of London*, 42 N. Y., 62; *King* v. *Hanson*, 4 Call., 259;

*Nousseaux* v. *Urquahart*, 19 La. A. R., 485; *Dennison* v. *Nubrick*, 3 Wash. C. R., 403; *Ward* v. *Smith*, 7 Wall., 452; *Paul* v. *Christie*, 4 H. & McH., 161.) The conduct and management of the business, being restricted to New Orleans, would not be affected by the war. (*Buchanan* v. *Carry*, 19 John., 137; *Kershaw* v. *Kelsey*, 100 Mass. R., 561; *Manhattan Life Ins. Co.* v. *Warwick*, 20 Grattan, 614.)

PECKHAM, J. The defendant, Matthews, who alone defends, insists that the partnership formed on the 27th day of March, 1861, by the defendants, to be void in case Bradner, Sr., then in Nassau, a proposed partner *in commendam*, refused to assent, became void by his refusal to give such consent, and that the contract of copartnership thereby became utterly void. But in fact the partnership did continue, though it might have been closed at once under that provision. It was not terminated in fact, as the evidence plainly shows.

There is some ground for holding that the notice of the dissolution of the firm, published by them, or by those residing in New Orleans on the 21st of October, 1861, in the New Orleans Picayune, put an end to the firm, but I do not intend to discuss that point.

The bar to this recovery is the dissolution of this copartnership by the civil war prior to the indorsement and discount of the note in suit.

The general rule that war, civil or *inter gentes*, dissolves all partnerships between citizens of hostile States, and converts every citizen of one hostile State into a public enemy of the other, is conceded, as it may well be. (The Prize Cases, 2 Black., 685; *Mrs. Alexander's Cotton*, 2 Wall., 404; *The Venice*, id., 258; *Woods* v. *Wilder*, 43 N. Y., 164; *Swinnerton* v. *The Colum. Ins. Co.*, 37 id., 178; *Griswold* v. *Waddington*, 15 J. R., 57; *Griswold* v. *Waddington*, 16 id., 438.

This rule is based upon principles of public policy, and is not affected by the intentions of the parties. (Cases above cited.)

But it is urged that this was not a commercial partnership,

and that therefore the rule as to the effect of civil war upon such partnerships has no application to this. Waiving the question as to the rule of law, the fact is plainly otherwise. The plaintiff insists that by the laws of the partnership no shipments were to be made out of New Orleans; not so. The contract in terms provided for a partnership " for the cotton factorage and general commission business in New Orleans." But it was agreed that the firm " shall never purchase or hold at any one time more than one thousand bales of cotton, nor shall any purchases be made " (not that they will not make shipments) " for shipments, but only for sale in New Orleans."

This restriction simply applies to *purchases* for the purpose of shipments—not that they would not ship cotton in the course of their commission business for others—cotton on which they should make advances, or title to which they might acquire in any way, but only they would not buy it for that purpose. This limitation, too, seems entirely confined to cotton. But it is clear that the firm in fact did a large commercial business—commercial in a liberal sense of the term— in buying and selling cotton, and various other products, in different States, in shipping them to others, to New York, to Liverpool, and in remitting proceeds to New Orleans, in purchasing bills of exchange and in other commercial transactions between the Confederate States and the United States, etc., etc.

This appears by the letters of the defendant, Matthews, introduced by the plaintiff.

There is nothing in the case of *Kershaw* v. *Kelsey*, 100 Mass., 561, a sound decision, that aids the plaintiff upon such facts.

It is further urged that the defendant is estopped from alleging that he resided in New York, after describing himself, in April, 1861, in his power of attorney to defendant's agent, as of the city of New Orleans.

In the articles of partnership Mitchell is described as of New York, and in fact he resided there continuously from

the time of the execution of the power of attorney, and there is no proof whatever that the plaintiff at the time of discounting this note supposed or believed that Matthews lived in New Orleans, or that it discounted this note upon any such idea, or that it had ever seen this·power of attorney. An estoppel cannot be based upon such facts. (*Lawrence* v. *Brown*, 1 Seld., 394.) It is superfluous to discuss the law when there is no fact for its application.

Judgment should be reversed and new trial granted, costs to abide the event.

All concur.

Judgment reversed.