CHARLES D. HUBBARD, Respondent, *v.* EDWARD MATTHEWS, impleaded, etc., Appellant.

One who indorses a promissory note in the name of a firm, cannot deny the existence of the firm in order to protect himself from liability.

Where, by agreement between a prior and subsequent indorser of a promissory note, the latter is to be liable upon his indorsement to the former, upon retransfer of the note the agreement is binding and will be enforced.

The dissolution of a partnership composed of citizens of two States, caused by the occurrence of a war between the States, does not affect a prior contract of indorsement made by the firm ; and no other or different notice of dishonor is necessary to be given in consequence of the war in order to charge all the members of the firm. An absent partner

residing in a hostile State, as to obligations and liabilities created before the war, is deemed to be represented by the representatives of the firm remaining within the jurisdiction of the belligerent whose authority extends over the place of business of the firm; and notice of dishonor there given binds all.

An agent constituted before a war may continue to represent his principal in transactions not contrary to the policy or interests of the government of the agent's residence, though the principal be an enemy resident under the hostile government. Where, therefore, such an agent is authorized to receive notice of the dishonor of notes indorsed by his principal, service of notice upon the agent after the breaking out of the war of the dishonor of a note binds the principal.

(Argued March 6, 1873; decided June term, 1873.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial district.

The firm of Brander & Hubbard was formed in New Orleans in May or June, 1860, and was composed of the plaintiff, Hubbard, and James S. Brander, Jr., as general partners, and James S. Brander, Sr., as partner *in commendam.*

It continued through that year and until March 27, 1861, when it was dissolved by an " authentic act," so called, passed according to Louisiana law, before a notary public. Notice of such dissolution was published in the newspapers of New Orleans. On the same day, March 27, 1861, a new firm, Brander, Chambliss & Co., was formed by authentic or notarial act passed before the · same notary, consisting of the defendants as general partners; James S. Brander, Sr., being named in the authentic act as partner *in commendam.* The writing contained a proviso that the same should be immediately forwarded to Brander, Sr., for his approval; and in case of his refusal, it should become null and void.

By the act of dissolution of Brander & Hubbard the defendant, Matthews, bought out the plaintiff's interest in that firm for $35,000. In carrying out said purchase said Matthews paid the plaintiff the purchase-money, thus, $10,333.97 in cash, and the balance of $24,966.03 in notes, of which those in suit are a part, which notes had been a portion of the assets of Brander & Hubbard, and had been

partitioned to Brander, Sr., in a division thereof, and by him loaned to his son-in-law, Matthews, for the purpose of enabling him to make this purchase of Hubbard. On delivering the notes to Hubbard, in lieu of so much of the purchase cash, the defendant, Matthews, indorsed the name of the new firm of Brander, Chambliss & Co. thereon. They bore the prior indorsement of Brander & Hubbard. These are the indorsements sued on.

Matthews thereupon turned over to the new firm of Brander, Chambliss & Co. the interest in the firm of Brander & Hubbard, so purchased by him, and such interest constituted Matthews' capital in that firm. This purchase was made on the 27th day of March, 1861, and was carried out the next day or the day after, and the new firm of Brander, Chambliss & Co. immediately went into operation as successors of Brander & Hubbard, occupying the same counting-house; Matthews himself, for the month thereafter that he remained at New Orleans, having the general and main charge.

On the 26th April, 1861, Matthews executed to Glendy Burke, the chief clerk of Brander, Chambliss & Co., two powers of attorney—one individually and one as partner in the firm of Brander, Chambliss & Co., in which he conferred upon the attorney full power to transact all kinds of business, both for himself and the firm, and, amongst other things, to receive and acknowledge notices of protest of all or any bills, drafts or promissory notes, to which he or the firm might be a party. Brander, Sr., declined to enter into the new arrangement. On the twenty-seventh or twenty-eighth of the same April Matthews left New Orleans. The notes, as they fell due respectively, were presented for payment and protested for non-payment, and due notice served at defendant's place of business. Two of the notices were served personally on said Burke.

Other facts appear in the opinion.

*Luther R. Marsh* for the respondent. Plaintiff was discharged from any liability as prior indorser in the firm name

of Brander & Hubbard by the indorsement of the paper to him by defendants. (*Bishop* v. *Hayward*, 4 T. R., 470, 472; *Moore* v. *Cross*, 19 N. Y., 227, 228; *Bacon* v. *Burnham*, 37 id., 614–620.) Notice of the dishonor of a note indorsed by a firm given to one of the partners, either before or after dissolution, binds all. (*Wheeler* v. *Maillot*, 20 La. An., 75; *Gowan* v. *Jackson*, 20 J. R., 176–179; *Willis* v. *Green*, 5 Hill, 232, 234; Pars. Part., 380, 386; *Beardsley* v. *Hall*, 36 Conn., 270; 4 Am. R., 74; *Bissell* v. *Adams*, 35 id., 299; *Murray* v. *Mumford*, 6 Cow., 441, 442; *Wood* v. *Bradick*, 1 Taunt., 104; *Griswold* v. *Waddington*, 16 J. R., 438, 493, 494; Collyer on Part., § 121; 3 Kent, 57 [marg.]; *Buchanan* v. *Curry*, 19 J. R., 137, 142, 143; Edwards on Bills, 632, note 3; *Brown* v. *Turner*, 15 Ala., 832; *Costar* v. *Thomason*, 19 id., 717–727; *Dabney* v. *Stidger*, 4 Sm. & M., 749; *Darling* v. *March*, 22 Me., 184; *Slocomb* v. *Lizardi*, 21 La. An., 355, 359; *Nott* v. *Douming*, 6 La. R., 684; *White* v. *Kearney*, 2 La. An., 639, 641; *Butchart* v. *Dresser*, 10 Hare, 453; 4 De G. M. & G., 542.) The powers of attorney to Burke to receive notices of protest were not dissolved by the war, though the principal removed to New York and the attorney lived in New Orleans. (*Clark* v. *Morey*, 10 J. R., 69, 73; *Griswold* v. *Waddington*, 15 id., 57, 68; *Buchanan* v. *Curry*, 19 id., 137, 141; *Conn.* v. *Penn*, 11 Peters, 496, 524; *Denniston* v *Imbrie*, 3 Wash., 396, 403; *Robinson* v. *In. L. As. Co.*, 42 N. Y., 54, 62; *King* v. *Hanson*, 4 Cal., 259; *Mousseaux* v. *Urquahart*, 1 La. An., 485; *Ward* v. *Smith*, 7 Wall., 452; *Paul* v. *Christie*, 4 Har. & McH., 161; *Man. Ins. Co.* v. *Warwick*, 1 Ins. L. J., 115, 128.)

*John K. Porter* for the appellant. The contract of indorsement was dissolved by the war. (2 Kent, 55–59; 3 id., 67; *The Wm. Bagley*, 5 Wal., 407; *The Prize Cases*, 2 Black, 667, 687; *The Venice*, 2 Wal., 274; *Griswold* v. *Waddington*, 16 J. R., 438.) After dissolution of a firm notice of the dishonor of a note happening, after dissolution, must be given to each partner. (3 Kent, 63, and authorities; Bailey on Bills,

285, ch. 7, § 2 ; Collyer on Part., §§ 544, 545 ; *Willis* v. *Green*, 5 Hill, 234 ; *Shepard* v. *Hawley*, 1 Conn., 367 ; *Sayer* v. *Frick*, 7 Watts, 383 ; 12 Barb., 251.)

JOHNSON, C.  The indorsements upon which this action is brought were made on the 27th or 28th of March, 1861, at New Orleans, and therefore at a period earlier than the breaking out of hostilities in the late civil war.  They were made by the defendant Matthews, then present in New Orleans, in the name of Brander, Chambliss & Co., and he therefore cannot be allowed to dispute either the existence of that firm or his responsibility as a member of it.  It actually proceeded to transact business for a considerable period. By the writing under which it was constituted it was to commence on the 27th of March, 1861, and it did so.  The writing provided that a copy should be immediately transmitted to Brander, Senior, for his approval ; and that, in case of his refusal, it should become null and void.  This, in my opinion, looks to an affirmative act of dissent on his part, until the happening of which the affairs of the firm would go on with the effect, at least, to bind the other and assenting partners.  To this effect are the decisions of the Court of Appeals, in *Bank of New Orleans* v. *Matthews* (49 N. Y., 12) and *McStea* v. *Matthews* (50 N. Y., 166), in each of which the court had before it the instrument above referred to.

The indorsements were made to transfer the notes to the plaintiff and to give him recourse against the firm of Brander, Chambliss & Co., in case of their non-payment.  They had formed part of the assets of Brander & Hubbard, which firm, by agreement, was dissolved on the day of the formation of the firm of Brander, Chambliss & Co.  For the interest of the plaintiff Hubbard in the firm of Brander & Hubbard, Matthews, to whom that interest was sold, was to pay Hubbard $35,000.  In part payment of this sum, Matthews indorsed, in the name of Brander, Chambliss & Co., the notes in question to Hubbard, in order to give to him the responsibility of the new firm upon these notes in

place of cash. If it be conceded that any difficulty might stand in the way of the plaintiff, were he now seeking to charge the other members of the firm of Brander, Chambliss & Co., Matthews can interpose no objection; for he was the actor in the whole matter and cannot be permitted to deny his own authority in order to protect himself from liability. Nor, since the case of *Moore* v. *Cross* (19 N. Y., 227), can there be any difficulty in Hubbard, the indorser of Brander Chambliss & Co., recovering against them, growing out of the fact that the firm name of Brander & Hubbard appears upon the paper before them. The intent of the parties in this respect can be carried out by the courts. (*Bacon* v. *Burnham*, 37 N. Y., 614.)

The more important question in the case is, whether Matthews was charged as indorser. All the notes were payable at the counting-house of Brander & Hubbard, in New Orleans. Upon its dissolution the new firm of Brander, Chambliss & Co. carried on its business at the same place, and continued to do so until after the maturity of the notes. On the 26th of April, 1861, Matthews, in New Orleans, constituted one Glendy Burke attorney in fact for himself, and also for the firm of Brander, Chambliss & Co., among other things, to receive and acknowledge all notices of protest for the firm or for himself. Burke, who had been and continued the chief clerk of the defendants, remained in New Orleans in attendance on the business of the defendants, his place of business being their counting-house. Matthews, whose residence was in New York, returned to that place soon after the execution of the powers of attorney. Before the maturity of any of the notes the civil war broke out and was flagrant between the United States and the so-called Confederate States. During its continuance all the notes matured and were duly presented for payment, and notice of their dishonor was given in due time at the office of the defendants, addressed to the firm. The question is, were these notices sufficient to charge Matthews, who was then in New York? He in New York and the other members of the firm in New Orleans by the

mere fact of war, had become enemies to each other, their relation of partners had been dissolved, and all commercial intercourse between them had become unlawful. (*Griswold* v. *Waddington*, 16 J. R., 438 ; *Woods* v. *Wilder*, 43 N. Y., 164 ; *The William Bagley*, 5 Wal., 377 ; *Kershaw* v. *Kelsey*, 100 Mass., 561.)  But neither had undergone, by the mere fact of war, a forfeiture of any existing rights of property, nor been exonerated from any existing liabilities.  Neither could maintain an action in the courts of the other party to the war while it should last, but the disability would terminate with the war itself. (*Levy* v. *Stewart*, 11 Wal., 244, 255.)  In the language of Chancellor KENT, in *Griswold* v. *Waddington*, above cited, " the parties were still partners as to those goods which had been actually purchased by them before the war ; and the parties, as partners, were bound to account to each other for the proceeds of these goods, and equally bound as partners to pay for them, if not already paid for.  A dissolution of partnership only has respect to the future.  The parties remain bound for all antecedent engagements.  The partnership may be said to continue as to everything that is past and until all pre-existing matters are wound up and settled."

The notes in question were held in New Orleans, were payable there ; and being unpaid there by the makers, might be paid by the indorsers who were there carrying on business ; and such payment, if made, could have been brought into account with Matthews, after the close of the war, in conformity with the case above cited ; for it obviously could be no defence to the other partners domiciled in New Orleans if sued by the holders in the courts of the locality during the war, to say that an enemy domiciled in New York was an indorser with them as partners.  Nor is there any authority or reason for holding that any different notice to the firm in New Orleans was necessary by reason of the dissolution by force of the war, in order to charge the members of the firm domiciled there.  If the case of parties so situated be likened to that of persons not partners who jointly indorse, the result

would be that neither could be charged, because, as to them, each must have separate notice, and neither is liable without the other is also charged. ( *Willis* v. *Green,* 5 Hill, 232 ; *Shepard* v. *Hawley,* 1 Conn., 367.) That rule would require, in order to charge the members of the indorsing firm resident in the territory of one belligerent, a communication, or an attempt to communicate, with an enemy resident in the territory of the other belligerent, which would fall under the prohibition of all commercial intercourse between the citizens of belligerents. It results then from necessity if the liability of the absent partner in a firm dissolved by the event of war is to be continued at all in respect to engagements existing at the time when war breaks out, that he must be deemed to be represented by the representative of the firm remaining within the jurisdiction of the belligerent whose authority extends over the place of business of the firm, and that, as in respect to property and rights there existing, so in respect to obligations and liabilities created before the war, he must share the fortunes of the firm. Such a rule does not seem to conflict with any public interests, nor with any determinations to which we have been referred. It agrees with the decisions in respect to the effect of dissolutions of partnership by consent of parties. Thus, in *Brown* v. *Turner* (15 Ala. [N. S.], 832), it was held that a demand of payment of one was a demand of all ; and it was said that a dissolution of partnership, before a bill falls due, cannot vary the rule, nor render it necessary that a separate demand should be made of each. In *Coster* v. *Thomason* (19 Ala. [N. S.], 717) the court says : "We believe the law to be well established that where a bill indorsed by a partnership is dishonored, notice to either of the late partners is sufficient to bind all." So, in *Slocomb* v. *Lizardi* (21 La. An., 355), it was held that notice to one member of a firm, indorsers of a note, is notice to all. In that case the dissolution was by death, and notice to the survivor was held to bind the estate of the deceased partner. In *White* v. *Kearney* (2 La. An., 639) goods had been contracted for by a firm, and after its dissolution were offered to

be delivered to one of the former partners, and it was held sufficient to put the firm in fault, he refusing to receive and pay for them. The only case to which we have been referred suggesting a doubt upon the generality of the rule is that of *Nott* v. *Downing* (6 La., 684), in which the circumstance existed and is remarked that the notice of dishonor was given to one partner before notice of dissolution had been received by the creditor. All these cases, by their reason, tend to illustrate the ground of and to sustain the rule well stated in Edwards on Bills and Promissory notes (page 632, note 3), that the dissolution cannot retroact on the contract of indorsement, under which notice to one of the partners affects all.

The same conclusion would result from the agency of Burke constituted by the defendants, then in New Orleans, and before the breaking out of the war and the general legal interruption of commercial intercourse, as defined in *McStea* v. *Matthews*, before referred to. To receive and acknowledge notices of protest was a power specially conferred upon him; and all the notices were delivered at his place of business in due time, and some to him personally.

The doctrine that an agent constituted before a war may continue to represent his principal in transactions not contrary to the policy or interests of the government of the agent's residence, though the principal be an enemy resident under the hostile government, seems to have been often affirmed; several times acted upon by the courts, and never, that I have found, denied. In *United States* v. *Grossmayer* (9 Wal., 72) Mr. Justice DAVIS, delivering the opinion of the Supreme Court of the United States, says: "We are not disposed to deny the doctrine that a resident in the territory of one of the belligerents may have, in time of war, an agent residing in the territory of the other, to whom his debtor could pay his debt in money, or deliver to him property in discharge of it; but in such a case the agency must have been created before the war began, for there is no power to appoint an agent for any purpose, after

hostilities have actually commenced; and to this effect are all the authorities.

The same principle is recognized in *Ward* v. *Smith* (7 Wal., 452); *Conn* v. *Penn* (1 Peters' Cir. C., 496, 524); *Denniston* v. *Imbrie* (3 Wash. C. C., 396, 403); *Paul* v. *Christie* (4 Harris & McH., 161); *Robinson* v. *International Life Ins. Co.* (42 N. Y., 54, 62); and also in the earlier cases in this State of *Buchanan* v. *Curry* (19 J. R., 137, 141); *Griswold* v. *Waddington* (16 id., 484); *Clarke* v. *Morey* (10 id., 69, 73). Moneys received by such an agent are lawfully paid and lawfully received though a remittance by him to his enemy principal, would be unlawful. If such an agency can exist at all for any purpose, it is not perceived why, being lawfully constituted in its beginning, it may not subsist for any purpose not hostile, and especially for such a purpose as to receive notices of dishonor upon notes in order to charge an absent indorser.

The judgment should be affirmed.

All concur.

Judgment affirmed.